UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RAFFEL SYSTEMS, LLC,**

    Plaintiff,

  v.                                      Case No. 21-CV-1167

**BOB'S DISCOUNT FURNITURE, LLC,
MACY'S, INC., and COSTCO WHOLESALE
CORPORATION,**

    Defendants.

---

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

---

Raffel Systems, LLC sues Bob's Discount Furniture, LLC, Macy's, Inc., and Costco Wholesale Corporation (collectively the "defendants") for infringement of its U.S. Patent No. 11,089,701 ("the '701 Patent) entitled "Lighted Cup Holder for Seating Arrangements." The defendants move to dismiss Raffel's complaint as procedurally barred by issue preclusion and/or by the *Kessler* doctrine, or alternatively, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons explained below, defendants' motion to dismiss is granted and the case is dismissed.

## BACKGROUND

Raffel is a manufacturing company with a range of products in the seating, bedding, and industrial marketplaces. (Compl. ¶ 9, Docket # 1.) Raffel makes and markets multifunctional cup holder products for seating arrangements, including, for example, Raffel's Home Theatre and Integrated Cup Holder products. (*Id.* ¶ 10.) Raffel holds over sixty patents related to seating arrangement components. (*Id.* ¶ 11.) Raffel alleges that it is

the owner by assignment of all rights, title, and interest in the '701 Patent entitled "Lighted Cup Holder for Seating Arrangements," issued on August 10, 2021. (*Id.* ¶ 12.) The defendants each engage in the sale of home furnishing goods, including furniture containing multifunctional cup holder products. (*Id.* ¶¶ 16–24.)

Prior to filing this lawsuit, in November 2018, Raffel sued Man Wah Holdings Ltd., Inc., Man Wah (USA) Inc., and XYZ Companies 1–10, a manufacturer and seller of furniture comprising certain cup holders, for patent infringement, amongst other causes of action. (*See Raffel Sys., LLC v. Man Wah Holdings, Ltd. et al.*, Case No. 18-CV-1765 (E.D. Wis.).) At issue in *Man Wah*, which remains pending before me, is infringement of Raffel's five utility patents, U.S. Patent No. 8,973,882 ("the '882 Patent"); U.S. Patent No. 10,051,968 ("the '968 Patent"); U.S. Patent No. 8,714,505 ("the '505 Patent"); U.S. Patent No. 7,766,293 ("the '293 Patent"); and U.S. Patent. No. 10,299,603 ("the '603 Patent") (collectively the "Ancestor Patents"). Like the '701 Patent at issue in the present case, the Ancestor Patents are entitled "Lighted Cup Holder for Seating Arrangements."

During the pendency of the *Man Wah* litigation, Man Wah redesigned its cup holders (the "New Cup Holders"). (Man Wah's Counterclaim ¶ 61, Docket # 103 at 37, Case No. 18-CV-1765.) In a letter dated July 30, 2019, Raffel informed Man Wah that it "recently learned" of the New Cup Holders and that the New Cup Holders "infringe Raffel's intellectual property," including the '505 Patent, the '882 Patent, the '968 Patent, and the '603 Patent. (Declaration of Clark Bakewell at ¶ 25, Ex. 24, Docket # 299-24 in Case No. 18-CV-1765.) Raffel demanded that Man Wah "cease and desist all infringing activity." (*Id.*) Raffel's letter included a photograph of Man Wah's New Cup Holders. (*Id.*)

In September 2019, in response to Raffel's Third Amended Complaint, Man Wah asserted several counterclaims for declaratory judgment, specifically seeking a declaration that the New Cup Holders did not infringe the Ancestor Patents or "any Raffel Intellectual Property." (Counterclaims XV–XXI.) When Raffel filed its Fourth Amendment Complaint in October 2019, it did not sue Man Wah for infringement based on the New Cup Holders, and Man Wah reasserted its counterclaims for a declaration of noninfringement as to the New Cup Holders and the '252 Patent, the '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, and the '603 Patent. (Man Wah's Counterclaims XV–XX, Docket # 133 at 41–45.)[1]

Man Wah moved for summary judgment in its favor on its counterclaims (Docket # 295-2), while Raffel moved for judgment on the pleadings in its favor on the counterclaims (Docket # 287). Raffel argued that because it had not pursued infringement claims against Man Wah as to the New Cup Holders, there was no live controversy for the Court to adjudicate. (Docket # 361 at 29–30.) I disagreed, and granted declaratory judgment in favor of Man Wah, finding the New Cup Holders did not infringe the '252 Patent, the '293 Patent, the '505 Patent, the '882 Patent, the '968 Patent, and the '603 Patent. (*Id.* at 29–35.) At no time, however, did Raffel argue the merits of the noninfringement issue, gambling instead that it would win on its jurisdictional argument. But the law is clear that even in a declaratory judgment situation, the burden of infringement remains with Raffel as to the New Cup Holders. (*Id.* at 34–35.)

In the instant case, Raffel sues the defendants, who are Man Wah's customers, for patent infringement, alleging that the New Cup Holders infringe Raffel's '701 Patent.

---

[1] Man Wah did not reassert its previous counterclaim for a declaratory judgment of noninfringement of the New Cup Holders as to "any Raffel Intellectual Property."

(Compl. ¶¶ 25–90.) The parties do not dispute that the '701 Patent is related to the Ancestor Patents, nor could they, as the '701 Patent itself lists all five Ancestor Patents as "related" patents to the '701 Patent. (Ex. 1 to Compl., Docket # 1-1 at 3.) Nor do the parties dispute that the "New Cup Holders" Raffel currently sues on are the same "New Cup Holders" at issue in the *Man Wah* litigation. The defendants argue that Raffel's present lawsuit is barred by either issue preclusion, pursuant to *Kessler v. Eldred*, 206 U.S. 285, 289–90 (1907), or substantively for failure to state a claim upon which relief can be granted.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law; thus, the law of the circuit applies. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A short and plain statement "'gives[s] the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.*

(citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014). A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *see also DeBartolo v. NorStates Bank*, No. 12-C-0081, 2012 WL 1623365, at *1 (E.D. Wis. May 9, 2012) ("[T]he court may take judicial notice of matters in the public record, including documents filed in previous cases, without converting a motion to dismiss into a motion for summary judgment.").

## ANALYSIS

The crux of defendants' motion to dismiss is that Raffel cannot pursue its current complaint against Man Wah's customers based on findings made in the related pending *Man Wah* case. Specifically, defendants argue that Raffel's current complaint is barred by issue preclusion and/or pursuant to *Kessler v. Eldred*, 206 U.S. 285, 289–90 (1907). Additionally, defendants argue that Raffel cannot state a plausible claim for relief because it cannot demonstrate that each and every limitation of the '701 Patent is met based on the previous construction of the term "flange" in Case No. 18-CV-1765. I will address each argument in turn.

*1. Procedural Bars*

Again, defendants argue Raffel is procedurally barred from pursuing its current complaint based either on issue preclusion or pursuant to *Kessler*.

1.1     Issue Preclusion

Collateral estoppel, or issue preclusion, "'precludes a plaintiff from relitigating identical issues by merely switching adversaries' and precludes a plaintiff 'from asserting a claim that the plaintiff had previously litigated and lost against another defendant.'" *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). "Because the criteria of collateral estoppel are not unique to patent issues, on appellate review we are guided by the precedent of the regional circuit . . . [h]owever, for any aspects that may have special or unique application to patent cases, Federal Circuit precedent is applicable." *Id.*

Under Seventh Circuit law, "[i]ssue preclusion bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Dexia Credit Loc. v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010). Issue preclusion applies if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Id.* Raffel does not contest the fourth element; thus, I will focus my analysis on the parties' dispute as to the first three elements.

### 1.1.1 Same Issue

Issue preclusion applies if the issue sought to be precluded is the same as the issue involved in the prior action. Raffel argues that the issue currently raised is not the same issue raised in the *Man Wah* litigation. Some background is necessary to understand the parties' arguments and place them into context. In the Ancestor Patents, the "cup holder apparatus" is said to comprise: "a flange extending substantially radially outward from the tubular side wall at the open top end of the cup holder, wherein the flange comprises a control switch . . . ." ('505 Patent col.8 l.1–1.5.) During the claim construction phase of the *Man Wah* litigation, Raffel and Man Wah disputed the meaning of the term "flange," with the principle dispute resting on whether the "flange" was removable or non-removable. In a decision issued in June 2020, I construed "flange" to mean "non-removable, attached to the cup holder body as a single unit." (Docket # 190 in Case No. 18-CV-1765.)

In so finding, one of the pieces of evidence on which I relied was the prosecution history of a related patent, U.S. Patent No. 9,867,471 ("the '471 Patent"). The '471 Patent contained the same cup holder figures as the Ancestor Patents, but the patentee asserted the claim for "a flange removably connected to the cup holder body at the open top end thereof . . . ." (*Id.* at 15.) This claim was rejected for failing to comply with the written description requirement of 35 U.S.C. § 112, with the examiner specifically stating that it was not clear how the flange would be removably connected to the cup holder body. (*Id.* at 15–16.) The patentee amended the '471 patent by removing the "removably connected to the cup holder body at the open top end thereof" language, leaving simply "flange." (*Id.* at 16.) I found that given the USPTO's rejection language and the patentee's subsequent amendment striking the "removably connected to the cup holder body" language, it was reasonable to interpret

7

Case 2:21-cv-01167-NJ   Filed 04/14/22   Page 7 of 20   Document 36

the patentee's action as acknowledging that the flange was not "removably connected." (*Id.* at 17.)

Several months later, Raffel learned that Man Wah redesigned its cup holders and sent Man Wah a cease and desist letter asserting that its New Cup Holders infringe the Ancestor Patents. While Raffel did not sue Man Wah for infringement regarding the New Cup Holders, in September 2019, Man Wah counterclaimed against Raffel for a finding of declaratory judgment of non-infringement of the Ancestor Patents as to the New Cup Holders. In August 2020, Man Wah's expert, Steven Ricca, completed a rebuttal expert report in which he opined that the New Cup Holder Products do not infringe the Ancestor Patents either literally or under the doctrine of equivalents "at least because the cup holder body is not in a tubular shape; the button assembly containing the control buttons is removable from the cup holder body; the button assembly extends inward; and the lighted element attaches towards the top opening of the cup holder." (Declaration of Nancy Cruz, Ex. 22, Rebuttal Expert Report of Steven Ricca at 25–31, Docket # 291-22 in Case No. 18-CV-1765.)

Likely in response to the *Man Wah* litigation, Raffel filed an application for the '701 Patent in October 2020. This new patent sought to broaden the language of the "cup holder apparatus" by claiming the "cup holder apparatus" comprises a "cup holder having a cup holder body adapted for attachment to the chair, wherein the cup holder body has a lower end, a top end, and a cup holding receptacle therebetween, and a flange extending from the top end of the cup holder body, wherein the flange comprises two or more control switches, wherein one of the two or more control switches is operatively connected to a light source . . . ." ('701 Patent col.8 l.35–l.41.) In other words, the new '701 Patent no longer claims a

8

Case 2:21-cv-01167-NJ    Filed 04/14/22    Page 8 of 20    Document 36

flange "extending substantially radially outward from the tubular side wall." ('505 Patent col.8 l.1–1.5.)

The defendants argue that the relevant issue in this case is whether the New Cup Holders infringe patent claims that require a "flange"—which is the same issue decided in the *Man Wah* litigation. (Def.'s Br. at 8, Docket # 15.) Raffel counters, however, that given the changes made in the '701 Patent—which do not include limitations found in the Ancestor Patents—the scope of the claims differ materially and thus the issues cannot be the same in both suits. (Pl.'s Br. in Opp. at 8, Docket # 29.) Specifically, Raffel asserts the following material differences between the '701 Patent and the Ancestor Patents: (1) unlike the '701 Patent, the Ancestor Patent claims specifically require (i) a cup holder body with a substantially tubular sidewall and a bottom wall and (ii) that the substantially tubular sidewall and bottom wall define the cup holding receptacle and (2) unlike the '701 Patent, the Ancestor Patents claims require a flange extending radially and outward from the top end of a tubular side wall of the cup holder body. (*Id.* at 9–11.)

Raffel fails to explain, however, how the changes in the '701 Patent change the pertinent "flange" issue from *Man Wah*. Raffel's argument for materiality rests entirely on the fact that Man Wah's expert, Ricca, opined that the New Cup Holders did not infringe the Ancestor Patents because the cup holder body of the New Cup Holders do not have tubular sidewalls and do not include a flange extending substantially radially outward. (*Id.*) But this does not show two different issues. Recall that to find infringement, every limitation recited in a properly construed claim must be found in the accused device, either literally or under the doctrine of equivalents. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001) ("'In order for a court to find infringement, the plaintiff must show the presence of every . . .

[limitation] or its substantial equivalent in the accused device.'"). Thus, Ricca's expert report merely serves to opine multiple ways in which the New Cup Holders fail to infringe the Ancestor Patents. Raffel contends, however, that the new '701 Patent encompasses the redesigned cup holders by no longer claiming "substantially tubular sidewall" and "substantially radially outward" limitations. (Pl.'s Br. in Opp. at 11.) As such, Raffel argues, the New Cup Holders now contain every limitation claimed in the '701 Patent and thus a finding of infringement of the '701 Patent is possible. (*Id.*)

But Raffel does not satisfactorily address the previously construed claim that a "flange" is "non-removable, attached to the cup holder body as a single unit." Instead, Raffel argues that this is not an issue with respect to the New Cup Holders because "they incontrovertibly feature a flange that is nonremovable." (*Id.*) Raffel asserts that Man Wah "plainly admitted" that the New Cup Holders contain a non-removable flange based on Ricca's expert report. Specifically, although Ricca opines in his report that the Court construed "flange" as non-removable, attached to cup holder body as a single unit and in "[his] opinion, no such 'flange' exists in the New Cup Holder Product," (Ricca Rebuttal Expert Report at ¶ 78, Docket # 291-22 in Case No. 18-CV-1765), Raffel points to Ricca's figure (shown below) and statement that the "only non-removable flange that the New Cup Holder Products have does not have any control switches disposed on it." (*Id.* ¶ 79, Fig. 14.)



Raffel argues that Man Wah has never actually argued that the New Cup Holders do not include a non-removable flange and instead "effectively ask this Court to decide the merits of an entirely different issues as a matter of law at the pleadings stage—that the New Cup Holders' non-removable flange does not comprise two or more control switches." (Pl.'s Br. in Opp. at 16–17.) Raffel alleges in its current complaint that the New Cup Holders' non-removable flange includes the "button assembly" and two or more control switches when the unit is assembled. (*Id.* at 17.) Raffel argues that defendants' non-infringement arguments "at most only establish that the New Cup Holders have split the claimed 'flange' into two parts—a non-removable flange and a button assembly." (*Id.* at 18.)

The Federal Circuit's decision in *Aspex Eyewear* is instructive here. In this case, Aspex sued Zenni Optical, LLC for infringement of several patents for magnetic clip-on eyewear. The district court held that Aspex was collaterally estopped from pursuing the second suit based on earlier litigation between the plaintiff and Altair Eyewear for infringement of the same patents. Aspex argued collateral estoppel did not apply because certain of the patent claims in the suit against Zenni were not included in the Altair litigation, and several of the

terms at issue in Zenni were either not previously construed or were incorrectly construed. 713 F.3d at 1379. Aspex argued that the issue at stake was not identical because:

> [T]he claim terms that were construed and applied in the Altair litigation are not the same as the claim terms now requiring construction. Aspex also argues that the claims of the '811 and '896 patents were not correctly construed in the Altair litigation, and that on the correct construction of the new terms, infringement by the Zenni products could be found. Aspex states that the issues now raised were not actually litigated and were not part of the prior judgment, and also that it did not have a full and fair opportunity to litigate. Thus Aspex argues that collateral estoppel does not arise, and that it is entitled to trial of infringement by the Zenni products on the correct claim construction.

*Id.* at 1381. The Federal Circuit disagreed, finding that although some of the claims of the '896 patent asserted against Zenni were not asserted against Altair, "every claim asserted against Zenni contains the same 'retaining mechanism' limitation, in the same context, that the Federal Circuit in *Altair III* found dispositive of non-infringement. The Zenni and Altair products are materially identical." *Id.* As such, the court found that in such circumstances, the assertion of different claims in a subsequent suit does not create a new "issue" to defeat preclusion:

> The Aspex claims now in suit contain the same "retaining mechanism" term that was construed in Altair as requiring rims. This construction is determinative of noninfringement by the Zenni eyewear; it is irrelevant whether the additional claims now in suit contain additional terms that were not previously construed.

*Id.* at 1381–82.

Although the *Aspex Eyewear* court was considering the same patent in two different lawsuits, I do not find that fact materially distinguishes the court's holding in this case. While the '701 Patent did not exist at the time litigation in *Man Wah* commenced, it relates to the Ancestor Patents and claims the same flange that "comprises a control switch" as the Ancestor Patents. The figures of the '701 Patent are the same as those of the Ancestor

Patents. Furthermore, notwithstanding Ricca's annotation in Figure 14 of his report, he clearly opines in the *Man Wah* litigation that the New Cup Holders *do not* contain a "flange" as construed by the Court. (Ricca Rebuttal Expert Report at ¶ 78.) In fact, the accused ICH and CHB cup holders similarly have a metal lip (that Raffel now argues is a flange) attached to the cup holder body to which the removable flange is attached by screws. (*Id.* ¶¶ 44, Fig. 3, 63, Fig. 8, 65, Fig. 9.) Thus, there is no new issue regarding a "split" flange. Rather, I find that the exact same issue is present in both *Man Wah* and the present case—whether the accused cup holder infringes a patent requiring a "flange." Thus, the first element of issue preclusion is met.

### 1.1.2 Issue Actually Litigated

Next, issue preclusion applies if the issue was actually litigated. Defendants argue that Man Wah put infringement of the New Cup Holders at issue in the litigation by seeking a declaration of non-infringement. (Def.'s Br. at 10–11.) Raffel counters that the summary judgment decision was limited to the Ancestor Patents and did not encompass any and all patent claims requiring a flange. (Pl.'s Br. in Opp. at 12–13.) As explained above, I do not find the fact the '701 Patent is a new patent dispositive of whether the issue was actually litigated. Furthermore, even if the '701 Patent did not exist until later, the patent is related to the Ancestor Patents and claims the same "flange" limitation. While Raffel asserts that the law does not *require* the same claim term appearing in related applications always be construed the same way (*id.* at 16, citing *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013); *Guardian Media Techs., Ltd. v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 63044, at *31–32 (E.D. Tex. May 2, 2013)), it offers no explanation as to why "flange" would be construed differently in this case, *see Omega Eng'g, Inc, v. Raytek Corp.*, 334

F.3d 1314, 1334 (Fed. Cir. 2003) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). For these reasons, I find the second element met.

### 1.1.3 Issue Essential to Final Judgment

Raffel argues the defendants cannot meet this element because the Court did not actually address or evaluate Man Wah's non-infringement arguments regarding the New Cup Holder design; rather concluding Raffel did not prove infringement because it opted to oppose Man Wah's motion on jurisdictional grounds. (Pl.'s Br. at 13.) Thus, Raffel argues that Man Wah's arguments and Ricca's opinions regarding non-infringement were not essential to the Court's decision. (*Id.* at 14.) Finally, Raffel argues issue preclusion should not apply because the summary judgment decision is an interlocutory order and not a final judgment with preclusive effect. (*Id.*)

As to Raffel's first argument, I disagree that the fact the merits of Man Wah's non-infringement argument were not addressed by Raffel makes the issue non-essential to the judgment. As the Federal Circuit stated, a "full and fair opportunity to litigate is the touchstone of any preclusion analysis." *Aspex Eyewear*, 713 F.3d at 1382. Raffel had a full and fair opportunity to litigate the merits of Man Wah's non-infringement claims as to the New Cup Holders. It chose not to. Raffel cannot now argue that the merits were not essential to the decision when it strategically chose not to address it.

Of greater concern, however, is whether a summary judgment decision, interlocutory in nature, can have a preclusive effect in a future lawsuit. Defendants argue, citing *Bell v. Taylor*, 827 F.3d 699 (7th Cir. 2016) in support, that "for purposes of collateral estoppel, a grant of summary judgment is a final judgment." (Defs.' Br. at 11–12.) In *Bell*, the Seventh

14
Case 2:21-cv-01167-NJ   Filed 04/14/22   Page 14 of 20   Document 36

Circuit found that this Circuit "has adopted the Second Circuit's relaxed concept of finality, at least for purposes of collateral estoppel, or issue preclusion," *id.* at 707, and stated that finality for purposes of appeal is not the same as finality for purposes of claim or issue preclusion, *id.* The *Bell* court also cites its previous decision in *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), where the court found that "[t]o be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment," *id.* (quoting *Miller*, 605 F.2d at 996).

Undoubtedly, a summary judgment decision that does not adjudicate all claims may be changed by the district court at any time prior to final judgment. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). And while the court of appeals has more recently spoken of a "relaxed concept" of finality for purposes of preclusion, this seemingly contradicts older cases in which the court of appeals stated that neither collateral estoppel nor res judicata have "any relevance to an interlocutory order, which may be changed by the district court at any time prior to final judgment." *See Matter of 949 Erie St., Racine, Wis.*, 824 F.2d 538, 541–42 (7th Cir. 1987).

It is clear that the simple fact that a party who lost at the district court could eventually win at the court of appeals does not preclude application of issue preclusion. Indeed, the Seventh Circuit has found that a trial court judgment can have a preclusive effect while an appeal is pending. *See Prymer v. Ogden*, 29 F.3d 1208, 1213 n.2 (7th Cir. 1994). At bottom, the issue is whether a district court judgment is a necessary condition

15
Case 2:21-cv-01167-NJ   Filed 04/14/22   Page 15 of 20   Document 36

precedent for the application of issue preclusion. I find that it is not. Again, the Seventh Circuit's stated "relaxed concept" of finality for purposes of issue preclusion counsels district courts to avoid hypertechnical interpretations of the finality requirement, instead considering whether finality serves the purpose of the rule of issue preclusion. *See Gilldorn Sav. Ass'n v. Com. Sav. Ass'n*, 804 F.2d 390, 394 (7th Cir. 1986) ("Although the Texas order was interlocutory and therefore not subject to appeal, 'the need for a final judgment [in the case as a whole] is not as compelling when the question is whether the determination of a single issue actually decided in the first action should be given conclusive effect in a later action between the parties on a different claim'") (quoting *In re Electric Weld Steel Tubing Antitrust Litigation*, 512 F. Supp. 81, 83 (N.D.Ill. 1981)); *Tate v. Showboat Marina Casino P'ship*, 250 F. Supp. 2d 958, 960 (N.D. Ill. 2003) ("The Court notes that a hypertechnical interpretation of the finality requirement in this case would not serve the policy behind the rule."). And in this case, considering the determination as to Man Wah's declaratory judgment causes of action "final" for purposes of issue preclusion serves the stated purpose of the rule.

To begin, a decision is "final" for purposes of issue preclusion when, "as a practical matter," the decision is immune to amendment or reversal. *Bell*, 827 F.3d at 707. In the *Man Wah* litigation, Raffel did, in fact, move for reconsideration of the summary judgment decision pursuant to Fed. R. Civ. P. 54(b). (Docket # 366 in Case No. 18-CV-1765.) Raffel did not, however, challenge the Court's findings as to the declaratory judgment claims. (*Id.*) Given that reconsideration serves the limited purpose of correcting manifest errors of law or fact or to present newly discovered evidence, *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987), and given Raffel's failure to challenge the Court's determination as

to the New Cup Holders, it seems highly unlikely at this juncture that the decision on this issue will be disturbed.

Furthermore, as stated in the decision, the purpose of the Declaratory Judgment Act is to address the "sad and saddening scenario" facing competitors attempting to conduct their business under threat of lawsuit by patent holders:

> In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

(Docket # 361 at 32–33 in Case No. 18-CV-1765, quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). Man Wah's situation demonstrated the exact "sad and saddening scenario" the Federal Circuit spoke of. Again, Man Wah redesigned its cup holders in response to the *Man Wah* litigation. When Raffel declined to sue for patent infringement or enter into a covenant not to sue as to the New Cup Holders, Man Wah did just what the Declaratory Judgment Act intended—it sought a judicial determination of whether the new product infringed Raffel's patents to avoid the *in terrorem* choice of either abandoning their enterprises or face growing potential liability for patent infringement.

Again, the purpose of the Declaratory Judgment Act, specifically with respect to patents, is to allow potential producers of a product to know whether their potential product infringes. (Docket # 361 at 34–35.) And although Man Wah brought the declaratory judgment claim, the burden of proving infringement remained with Raffel as to the New

17

Case 2:21-cv-01167-NJ   Filed 04/14/22   Page 17 of 20   Document 36

Cup Holders. (*Id.*) But despite Man Wah putting the merits of this issue in dispute, Raffel chose not to litigate it. And because the '701 Patent was not at issue in the *Man Wah* litigation, Raffel now attempts to bring the patent infringement claim against Man Wah's customers that it declined to bring against Man Wah regarding the New Cup Holders.

The very purpose of issue preclusion, however, is to prevent plaintiffs from switching adversaries to launch the same attack it previously lost. And while Raffel argues that its claim that the New Cup Holders infringe the '701 Patent is not the same issue because the '701 Patent contains some differences from the Ancestor Patents, I am not convinced. Again, the crux of the infringement issue, both with the Ancestor Patents and the '701 Patent, is the claim of a "flange." If Raffel wanted to litigate whether the New Cup Holders infringe its patents, it could have addressed the "flange" claim within that context. But it chose not to, and Man Wah received a finding of non-infringement as to its New Cup Holders. It would be patently unfair to allow Raffel to now come forward and sue for infringement based on the New Cup Holders when the finding in the *Man Wah* litigation seemingly cleared up the uncertainty for the parties and others as to what products they were free to use. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199–200 (2014). For these reasons, finding the declaratory judgment decision "final" serves the purpose of the rule of issue preclusion in this case.

For all of these reasons, I find Raffel's lawsuit barred by issue preclusion and will be dismissed. Given my finding on this issue, I decline to address the defendants' alternative, related procedural argument that Raffel's lawsuit is barred under the *Kessler* doctrine.

### 2. Failure to State a Claim

Defendants alternatively argue that Raffel's complaint must be dismissed for failure to state a claim upon which relief can be granted. Defendants argue that given the Court's construction of the "flange" limitation in the Ancestor Patents, Raffel cannot state a plausible claim for relief because it cannot demonstrate that each and every limitation of the '701 Patent is met. (Defs.' Br. in Supp. at 16.) Raffel's sole argument as to why its complaint properly states a claim for infringement is that the construction of "flange" claimed in the Ancestor Patents in the *Man Wah* litigation is not dispositive of the infringement issues in this case. (Pl.'s Br. in Opp. at 15–19.) However, for the reasons discussed in detail above, I find that the construction of flange in the *Man Wah* litigation is dispositive of the issue in this case. Furthermore, while Raffel argues that "[a]t a minimum, the above issues present factual or claim construction disputes that would be wholly inappropriate to resolve on a Rule 12(b)(6) motion to dismiss," (*id.* at 19), defendants contend that Raffel has served defendants with its proposed terms for claim construction, which identifies no terms to be construed (Defs.' Reply Br. at 14 n.9, Docket # 33). Raffel filed a proposed sur-reply brief in response to defendants' reply, but does not contend defendants' assertion regarding proposed terms for construction is incorrect. (Docket # 34-1.)

Given that Raffel does not argue an alternative construction of "flange" for the '701 Patent, and given that to find infringement, every limitation recited in a properly construed claim must be found in the accused device, either literally or under the doctrine of equivalents, *Gart*, 254 F.3d at 1339, without a non-removable flange, Raffel cannot show that the New Cup Holders infringe the '701 Patent. For these reasons, I also find Raffel's complaint fails to state a claim upon which relief can be granted and must be dismissed.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants' motion to dismiss (Docket # 14) is **GRANTED**. The Clerk of Court will enter judgment accordingly.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a sur-reply brief (Docket # 34) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 14th day of April, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge